**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 18, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARTHUR MORRIS MANNIE, JR.,

    Defendant - Appellant.

————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL DEWAYNE MAYTUBBY,

    Defendant - Appellant.

No. 19-6102

No. 19-6111

————————————————

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. Nos. 5:09-CR-00289-F-1 and 5:06-CR-00136-R-1)**
————————————————

Susan M. Otto, Federal Public Defender (Paul Antonio Lacy, Assistant Federal Public Defender, with her on the brief), Oklahoma City, Oklahoma for Defendants-Appellants.

Timothy W. Ogilvie, Assistant United States Attorney (Timothy J. Downing, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.
————————————————

Before **HARTZ**, **EBEL**, and **MATHESON**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

To alleviate some of the impacts caused by the statutory sentencing disparity between crack cocaine and powder cocaine offenses, Congress passed the Fair Sentencing Act of 2010 ("2010 FSA") which, among other things, increased the quantity of crack cocaine required to trigger certain statutory penalties. In 2018, Congress passed the First Step Act ("2018 FSA"), which, inter alia, made the Fair Sentencing Act's benefits retroactively applicable to offenders who committed offenses prior to the 2010 FSA's effective date of August 3, 2010.

We have consolidated these appeals for the purpose of disposition, and we address the requirements for reducing an offender's sentence under section 404 of the 2018 FSA. We hold that an offender is eligible to seek relief under the 2018 FSA if he or she was convicted of and sentenced for (1) a violation of a federal criminal statute, (2) the statutory penalties for which were modified by section 2 or 3 of the 2010 FSA, and (3) that was committed prior to August 3, 2010. We further hold that our review of the district court's action on a 2018 FSA motion is for an abuse of discretion, the same as other post-trial motions. Finally, we hold that when presented with a 2018 FSA motion for a reduced sentence, the court need not, but may in its discretion, hold a hearing on the motion.

Arthur Morris Mannie, Jr., and Michael Dewayne Maytubby moved the district court for reductions in their sentences pursuant to the 2018 FSA. The district court

2

declined to reduce either sentence; both Mannie and Maytubby appealed. Applying today's holdings to the cases at bar, we AFFIRM the district court's order denying Mannie's motion for sentence modification, and we DISMISS Maytubby's appeal for lack of standing.

## I. BACKGROUND

A. Sentence Modification and the First Step Act of 2018

In general, once a court has imposed a sentence, the court has no authority to modify that sentence. However, that is not an absolute rule; Congress has provided the court with the authority to modify previously imposed sentences in three, very limited circumstances. The court's authority to modify a sentence, and the limitations of that authority, is set forth in 18 U.S.C. § 3582(c). One such exception permits a court to modify a previously imposed sentence when a modification is "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."[1] § 3582(c)(1)(B).

The specific authority for that exception is found in § 3582(c)(1)(B), which authorizes the court to implement modifications as directed by statute (or Federal Rule of Criminal Procedure 35):

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that--
> **(1)** in any case--

_____

[1] The other two exceptions are when there are certain extraordinary and compelling circumstances, § 3582(c)(1)(A), and when a revision to the U.S.S.G. has lowered the sentencing range on which an offender's sentence was based, § 3582(c)(2). Neither exception is applicable here.

3

. . .

> **(B)** the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]

While this exception authorizes the court to implement modifications, it does not itself provide standards for those modification. Thus, § 3582(c)(1)(B)'s authorization alone is not sufficient—the court must look elsewhere to find another statute containing said standards. In this case, those statutes are the Fair Sentencing Act of 2010 and the First Step Act of 2018.

In 2010, the statutory sentencing guidelines for drug offenses included a 100-to-1 ratio between sentences imposed for crack cocaine and those imposed for powder cocaine. There was a growing concern that this disparity was unjustified by the differences between the two forms of cocaine, and that it was discriminatory because it led to much higher sentences for offenses dealing with crack cocaine than those dealing with powder cocaine. Congress sought to reduce that disparity in two separate statutes, beginning with the Fair Sentencing Act of 2010. Pub L. No. 111-220, 124 Stat. 2372.

The 2010 FSA in part reduced the disparity for sentences imposed after the effective date of that statue by increasing the quantities of crack cocaine required to subject an offender to a mandatory minimum sentence, id. § 2, and by eliminating the mandatory minimum sentence for simple possession, id. § 3. Had that statute been in effect when Mannie and Maytubby were convicted, it would have led to significantly reduced sentences for both of them. However, Congress did not make the 2010

4

FSA's sentencing adjustment retroactive, and the Supreme Court has never held it to be so.

Congress rectified that inequity when it enacted the First Step Act of 2018, which retroactively applied the new crack cocaine quantity thresholds to those offenders who were sentenced prior to the 2010 FSA's effective date.[2] As the language in the 2018 FSA is short and important to our decision here, we lay it out in full:

### SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

---

[2] The 2018 FSA also made the 2010 FSA's elimination of the mandatory minimum for simple possession retroactive; but, as that section is not at issue in either case before us, we do not discuss it further.

First Step Act of 2018, Pub. L. 115-391, § 404, 132 Stat. 5194, 5222 (internal citations omitted). Now, many of those previously ineligible to gain the benefits of the 2010 FSA can bring a 2018 FSA motion requesting a sentence reduction.

Congress permitted a broad group of people to bring a 2018 FSA motion—"the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court," § 404(b)—and there is no time limit in which it must be brought. Once a 2018 FSA motion has been brought, however, reducing an offender's sentence is firmly in the court's discretion. Congress not only used the permissive "may" when granting the court authorization to reduce a sentence, § 404(b), but it also expressly stated that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section," § 404(c).

The 2018 FSA gives discretion to sentencing courts to reduce a previously imposed sentence "as if sections 2 and 3 of the [2010 FSA] were in effect at the time the covered offense was committed." § 404(b). The 2018 FSA defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [2010 FSA], that was committed before August 3, 2010." § 404(a). Offenders who committed a covered offense are now eligible for the benefits created by the 2010 FSA.

The 2018 FSA became effective on December 21, 2018, and appeals from 2018 FSA motions are now popping up in circuits across the country.

B. Arthur Mannie

6

In 2009, Mannie pleaded guilty to one count of possession with intent to distribute 50g or more[3] of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Mannie's conviction carried a statutory mandatory minimum sentence of ten years and a maximum of life. Because Mannie was a career offender, the United States Sentencing Guidelines ("U.S.S.G.") provides an alternate method of calculating his offense level, which is based on the statutory maximum sentence of the convicted offense. In Mannie's case, a statutory maximum of life led to an alternate offense level of 37 which, after being reduced for Mannie's acceptance of responsibility, created an advisory guideline range of 262 months to 327 months. Mannie was sentenced to 262 months, the bottom of the guideline range.[4] In May 2019, Mannie moved for a reduction in his sentence pursuant to the 2018 FSA.

Because the 2010 FSA reduced the statutory maximum sentence for Mannie's offense from life to forty years imprisonment, his alternate offense level was 34, rather than 37. This reduction, combined with a reduction for acceptance of responsibility, resulted in a new advisory guideline range of 188 months to 235 months. Mannie requested a below-guidelines sentence of 120 months or, in the alternative, a sentence at the bottom of the range, 188 months.

---

[3] At the time of Mannie's trial, the threshold quantity of crack cocaine for a statutory maximum of a life sentence was 50g; the 2010 FSA increased the threshold quantity to 280g. The quantity of crack cocaine attributed to Mannie for the purpose of sentencing is not at issue in this appeal. (Mannie ROA 158.).

[4] This court affirmed his sentence when it enforced the appeal waiver in Mannie's plea agreement. United States v. Mannie, 388 F. App'x 840, 841 (10th Cir. 2010) (unpublished).

After a review of the parties' written submissions, the sentencing court agreed that Mannie was eligible to seek relief under the 2018 FSA; however, when "[t]aking into account all of the [18 U.S.C.] § 3553 sentencing factors, the court conclude[d] quite readily, that the interest of the public would be ill-served by according this defendant sentencing relief." (Mannie ROA 163.) His appeal followed.

Mannie argues that the district court erred by (1) failing to provide Mannie a hearing, and (2) declining to reduce Mannie's sentence. We are not persuaded by these arguments and find no error by the district court. Therefore, we AFFIRM the district court's order denying relief to Mannie under the 2018 FSA.

## C. Michael Maytubby

In 2006, a jury convicted Maytubby of eight counts relating to his participation in a drug trafficking organization, including one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846. Maytubby was sentenced to 235 months on the conspiracy count, to run concurrently with 235-month sentences on two other counts. After including his sentences for the remaining five counts, Maytubby was sentenced to a total of 295 months, which this court affirmed on appeal. United States v. Maytubby, 272 F. App'x 749, 751 (10th Cir.) (unpublished), cert. denied, 555 U.S. 1006 (2008).

Prior to the instant case, Maytubby obtained some relief from this sentence through two amendments to the U.S.S.G., which changed Maytubby's advisory guideline range. In 2007, Maytubby's three original 235-month sentences were each reduced to 188 months, pursuant to Amendment 706. See U.S. Sentencing

8

Guidelines Manual app. C, amend. 706 (U.S. Sentencing Comm'n 2007). Seven years later, pursuant to Amendment 782, each of Maytubby's three, modified, 188-month sentences was further reduced to 151 months. See U.S. Sentencing Guidelines Manual app. C, amend. 782 (U.S. Sentencing Comm'n 2014). In May 2019, Maytubby moved for a further reduction in his twice-reduced sentence pursuant to the 2018 FSA. After reviewing the parties' written submissions, the sentencing court denied Maytubby's motion on the merits.

Addressing Maytubby's current request for a further reduction of sentence under the 2018 FSA, the sentencing court[5] first concluded that Maytubby was eligible to seek relief under the 2018 FSA because he was convicted under federal law of conspiracy to distribute cocaine base, the penalty for which was modified by section 2 of the 2010 FSA, and he committed this offense prior to August 3, 2010, the effective date of the 2010 FSA. (Maytubby ROA 272.)

However, upon reviewing Maytubby's motion, the sentencing court noted that the 2018 FSA did not change Maytubby's advisory guideline range of 151 months to 188 months, as it was calculated at his last sentence modification; thus, the 2018 FSA's only impact would be a reduction of the statutory mandatory minimum sentence for conspiracy, from ten years to five years. After considering the sentencing factors set forth in § 3553(a), the sentencing court determined that

---

[5] Maytubby's original sentence and his two sentence reductions were handled by Chief Judge Vicki Miles-LaGrange; upon her retirement, Maytubby's case was transferred to Judge David L. Russell, who issued the appealed-from order in the instant case.

Maytubby's previously reduced sentence remained appropriate and declined to reduce Maytubby's sentence further. Maytubby moved the sentencing court to reconsider, which it declined to do. His appeal followed.

Maytubby argues that the district court erred by (1) treating the lack of change in his advisory guideline range as dispositive, (2) failing to provide Maytubby a hearing, and (3) declining to further reduce his sentence. However, we conclude that even if he were to prevail on these arguments, the court could not give him any substantive relief because his challenge is only to the length of his sentence, and he is facing other concurrent sentences for the same or greater amounts of time which are not being challenged. Thus, we DISMISS Maytubby's appeal for lack of standing.

## II. JURISDICTION

As explained above, the "district court is authorized to modify a defendant's sentence only in specified instances where Congress has <u>expressly</u> granted the court jurisdiction to do so." <u>United States v. Baker</u>, 769 F.3d 1196, 1198 (10th Cir. 2014); <u>see</u> <u>United States v. Spaulding</u>, 802 F.3d 1110, 1124 (10th Cir. 2015) ("[Section] 3582(c) acts as a jurisdictional limitation on the ability of district courts to alter previously imposed sentences of imprisonment."). Here, both defendants rely on the second of these exceptions, § 3582(c)(1)(B), where a reduction is "expressly permitted by statute."[6] Jurisdiction under § 3582(c)(1)(B) is limited by the express

_____

[6] Although there was some dispute below as to which exception applied to 2018 FSA motions, all parties now agree that the proper exception is that found in § 3582(c)(1)(B).

terms of the statute permitting modification—here, that of the 2018 FSA. The 2018 FSA limits both the court's actions and the movant's eligibility for relief.[7]

As to an offender's eligibility to move for relief, the 2018 FSA has minimal requirements. The 2018 FSA allows a court to reduce a sentence imposed for a "covered offense," defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [2010 FSA], that was committed before August 3, 2010." § 404(a). Thus, to be initially eligible for relief, an offender must have been convicted of and sentenced for (1) a violation of a federal criminal statute, (2) the penalties for which were modified by section 2 or 3 of the 2010 FSA, and (3) that was committed prior to August 3, 2010.

Although the bar for eligibility is low, the 2018 FSA places two limitations on the court's ability to entertain a 2018 FSA motion. "No court shall entertain" a 2018 FSA motion if (1) an offender's sentence for the covered offense was previously imposed or reduced in accordance with section 2 or 3 of the 2010 FSA, or (2) the court has already denied a previous 2018 FSA motion "after a complete review of the motion on the merits," § 404(c). These limitations essentially ensure that offenders

---

[7] Neither an offender's eligibility to move for relief nor the court's discretion to grant it is restrained by the U.S.S.G.'s advisory guideline range, in contrast to a § 3582(c)(2) proceeding. See § 3582(c)(2) (permitting reduction only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"); see also U.S.S.G. § 1B1.10(b)(2)(A) (Sentencing Commission policy statement prohibiting a court from reducing a sentencing below the new guideline range unless the original sentence was also below the guideline range).

11

only get one bite of the apple.  An otherwise eligible offender who meets either of these limitations is rendered ineligible for relief under the 2018 FSA.

Mannie and Maytubby were convicted of violating federal criminal statutes, for which they were sentenced according to the statutory penalties in 21 U.S.C. § 841(b)(1)(B)(iii) (for Mannie) and 21 U.S.C. § 841(b)(1)(A)(iii) (for Maytubby). The penalties in both subsections were modified by section 2 of the 2010 FSA.  2010 FSA § 2, 124 Stat. at 2372.  Both Mannie and Maytubby committed these crimes prior to August 3, 2010, the effective date of the 2010 FSA.  Neither Mannie nor Maytubby has previously brought a 2018 FSA motion, and neither sentence was imposed or previously reduced in accordance with the 2010 FSA.  Therefore, both Mannie and Maytubby are eligible for relief under the 2018 FSA, and § 3582(c)(1)(B) gives the court statutory jurisdiction to entertain their motions.

### III.  DISCUSSION

A.    <u>Maytubby Does Not Have Standing to Bring a 2018 FSA Motion</u>

While the court has statutory jurisdiction to entertain a 2018 FSA motion, such a motion must also fall within the scope of the court's constitutional jurisdiction. "Article III of the United States Constitution only extends federal judicial power to cases or controversies." <u>United States v. Meyers</u>, 200 F.3d 715, 718 (10th Cir. 2000).  From this limitation, the U.S. Supreme Court has "deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 125 (2014) (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)).

12

Constitutional standing has three requirements: injury in fact, traceability, and redressability.  Meyers, 200 F.3d at 718.

As noted above, Maytubby's current sentence for his 2018 FSA covered offense is 151 months.  This sentence runs concurrently with two of Maytubby's other convictions for offenses not covered by the 2018 FSA and which would be unaffected even if he were to prevail on his 2018 FSA claim here.  Following oral argument in these cases, we ordered supplemental briefing addressing whether a live controversy existed, as Maytubby's concurrent sentences cannot be modified by the 2018 FSA.[8]  For the following reasons, we conclude that Maytubby's appeal does not present a live controversy.

An offender who challenges his conviction or his sentence has standing to do so because "the ongoing incarceration constitutes an injury from which the defendant seeks relief in satisfaction of Article III."  Meyers, 200 F.3d at 718.  Unlike a direct appeal of a conviction, which challenges the underlying conviction, a motion brought under the 2018 FSA only challenges the sentence—the length of incarceration; it does not challenge the collateral consequences of the underlying conviction.  Because the only injury that can be alleged in a 2018 FSA motion is the ongoing

---

[8] The question presented in our order for supplemental briefing was:

Whether this case presents a live case or controversy because any relief that may be provided to the defendant upon his challenge to the length of his sentence under Count 1 would be illusory since the defendant cannot challenge his concurrent sentences under Counts 2 and 6.

13

incarceration, the offender only has standing to bring a 2018 FSA motion to the extent that the court could redress the offender's ongoing incarceration.

Where, as here, an offender has been sentenced concurrently, the court can only redress the ongoing incarceration to the extent that some portion of the incarceration is solely dependent on the sentence of the crack cocaine offense that might be reduced under the 2018 FSA. Put simply, if reducing an offender's sentence under the 2018 FSA does not have the effect of actually reducing the offender's length of incarceration, then the court cannot redress the offender's injury under the 2018 FSA. If the court cannot redress the offender's injury, then the offender does not have standing, a live controversy is not present, and the court does not have jurisdiction.[9]

Maytubby's sentence for his 2018 FSA "covered" crack cocaine offense runs concurrently with his two sentences for drug offenses not covered by the 2018 FSA. Although the Sentencing Commission has since lowered the advisory guidelines ranges for Maytubby's two drug offense sentences, the court has already reduced said

[9] This is not to say that no offender who was sentenced for a crack cocaine offense concurrently with a non-crack cocaine offense will have standing to bring a 2018 FSA motion. Section 3582(c)(1)(B) is not the only statute that provides the court with jurisdiction to modify a sentence. For example, a sentencing court may have jurisdiction to reduce an offender's sentence for non-crack cocaine offenses under § 3582(c)(2) if the offender's advisory guideline range has been lowered; and, the court may undertake such modifications "on its own motion." Hence, by exercising its authority under both § 3582(c)(1)(B) and § 3582(c)(2), the court could actually reduce the offender's length of incarceration if the concurrent sentences are reduced as well. As long as it is possible for the court to grant some actual reduction, an offender will have standing. But that situation is not asserted in the appeal before us.

14

sentences to the bottom of the current guideline ranges, exercising its authority under § 3582(c)(2). In doing so, however, the court reached the limits of its authority under § 3582(c)(2), which does not permit a reduction below the current guideline range unless the original sentence was below the guideline range. See § 3582(c)(2) (permitting reduction only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"); U.S.S.G. § 1B1.10(b)(2)(A) (Sentencing Commission policy statement prohibiting a court from reducing a sentencing below the new guideline range unless the original sentence was also below the guideline range). Because Maytubby's original drug offense sentences were not below the guideline range, and they have since been reduced to the bottom of the current guideline range, the court has no authority under § 3582(c)(2) to reduce Maytubby's drug offense sentences any further.[10]

Because neither § 3582(c)(2) nor § 3582(c)(1)(B) gives the court the authority to reduce Maytubby's two concurrent sentences, any reduction in the sentence of Maytubby's covered offense would not actually reduce the length of Maytubby's incarceration.[11] Hence, the court cannot redress Maytubby's injury, and Maytubby's

---

[10] In supplemental briefing, Maytubby seeks to raise an argument under the sentencing guidelines that a modification of his sentence under Count 1 dealing with crack cocaine may have affected his sentences for other counts under the guidelines. But, as we have pointed out previously, the 2010 FSA modified only statutory provisions under applicable circumstances and made no modifications to the guidelines. Thus, this argument misses the mark.

[11] Nor could the court effectively reduce the length of Mannie's supervised release, as his term of supervised release for his covered offense runs concurrently and coextensively with the two other, non-covered offenses. See United States v.

15

2018 FSA motion does not present a live controversy.  Therefore, we DISMISS

Maytubby's appeal for lack of standing.[12]

B.    The District Court Did Not Abuse Its Discretion in Denying Mannie's 2018
      FSA Motion for Sentencing Relief

We now turn to Mannie's case, which raises two primary issues: (1) what

standard of review applies to appeals of 2018 FSA motions, and (2) whether a court's

review of a 2018 FSA motion amounts to plenary resentencing.  We address these

issues in turn.

      1.    Standard of Review

This is an issue of first impression for this court.  All parties generally agree

that the proper standard of review is for an abuse of discretion.  Mannie contends,

however, that because a 2018 FSA motion requires a sentencing court to exercise its

sentencing discretion, we should review the decision below for an abuse of

sentencing discretion, utilizing the two-step approach required after United States v.

Booker, 543 U.S. 220 (2005), and announced in Gall v. United States, 552 U.S. 38,

51 (2007) (noting that when an appellate court reviews a sentence, "[i]t must first

---

Holloway, 956 F.3d 660, 666 (2d Cir. 2020) (holding that a live controversy remained in a 2018 FSA proceeding "to the extent that the district court could still reduce an undischarged term of supervised release"); United States v. Sutton, 962 F.3d 979, 983 (7th Cir. 2020) (same).

[12] Our ruling as to Maytubby is without prejudice because we are ruling on a jurisdictional point rather than on the merits of his claim.  If, at some future date, Maytubby's other concurrent sentences are reduced, perhaps he can renew this claim. But that particular scenario is not before us today, so we express no opinion on the law nor do we make any rulings on that hypothetical situation.

ensure that the district court committed no significant procedural error"; if the sentence is procedurally reasonable, "the appellate court should then consider the substantive reasonableness of the sentence imposed"). We disagree.

Defendants who are eligible to bring 2018 FSA motions have already had the opportunity to challenge the district court's sentencing decisions on direct appeal.[13] Because their sentences have already been imposed, the court may only modify their sentences to the extent authorized by § 3582(c). Thus, this court is not reviewing a sentencing proceeding, or even a resentencing proceeding, but only a sentence-modification proceeding. And, upon review of a sentence-modification proceeding, this court reviews not the propriety of the sentence itself, but the propriety of the district court's grant or denial of the motion to reduce the sentence. Moreover, the 2018 FSA itself states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." § 404(c). Because the 2018 FSA gives the district court broad discretion to grant or deny the motion, we review the district court's decision only for an abuse of that discretion. All of our sister circuits to consider the proper standard of review for the denial of a 2018 FSA motion have reached the same conclusion.[14]

---

[13] Or, as in Mannie's case, they may have waived such a challenge in their plea deals.

[14] United States v. Jackson, 964 F.3d 197, 201 (3d Cir. 2020) ("If a defendant is eligible for a reduced sentence under [the 2018 FSA], a district court's denial of relief is reviewed for an abuse of discretion."); United States v. Gordon, 811 F. App'x 842, 843 (4th Cir. 2020) (unpublished per curiam) ("This court reviews the district court's ruling on a sentence reduction motion for abuse of discretion . . . .");

17

2.    The Scope of a 2018 FSA Proceeding

The court below ruled on Mannie's 2018 FSA motion on the basis of the written submissions.  (Mannie ROA 149.)  Mannie contends that he "should have been granted the opportunity to be present at a hearing that afforded him the opportunity to speak directly to the court and to present evidence on the ultimate issue of whether a reduced sentence should be imposed."  (Opening B. 10.)  Whether the 2018 FSA entitles a movant to a hearing is an issue of first impression for this circuit; however, all other circuits to address this issue have concluded that the 2018 FSA does not entitle a movant to a hearing.  See Jackson, 945 F.3d at 321 (5th Cir.) ("Jackson suggests that the court should have held a hearing. But nothing in the [2018] FSA requires it to do so . . . ."); United States v. Barber, __F.3d __, 2020 WL 4035137, at *3 (6th Cir. 2020) ("[I]n First Step Act cases, . . . the formalities of a full sentencing hearing don't apply."); United States v. Hamilton, 790 F. App'x 824, 826 (7th Cir. 2020) (unpublished) ("[N]othing in the First Step Act requires a district court to hold any sort of hearing."); United States v. Williams, 943 F.3d 841, 843

United States v. Jackson, 945 F.3d 315, 319 (5th Cir. 2019) ("We hold now that abuse of discretion generally applies, because the FSA gives the district court broad discretion in deciding whether to resentence."); United States v. Flowers, 963 F.3d 492, 497 (6th Cir. 2020) ("The district court's denial of a motion for sentence reduction under the First Step Act is reviewed for an abuse of discretion."); United States v. Sutton, 962 F.3d 979, 986 (7th Cir. 2020) ("[W]e review the denial of a First Step Act motion for, at most, an abuse of that discretion."); United States v. McDonald, 944 F.3d 769, 771 (8th Cir. 2019) ("We review for an abuse of discretion the district court's decision to grant or deny an authorized sentence reduction."); United States v. Jones, 962 F.3d 1290, 1296 (11th Cir. 2020) ("We review for abuse of discretion the denial of an eligible movant's request for a reduced sentence under the First Step Act.").

18

(8th Cir. 2019) ("Because the [2018 FSA] gives district courts discretion to reduce the sentence and does not mention a hearing, it does not require district courts to hold a hearing."); United States v. Kelley, 962 F.3d 470, 479 (9th Cir. 2020) (concluding "that the First Step Act does not authorize plenary resentencing"); United States v. Denson, 963 F.3d 1080, 1086–87 (11th Cir. 2020) (holding that a 2018 FSA movant did not have "a legal right to be present at a hearing before the district court ruled on his motion"). We agree.

Whether the 2018 FSA entitles a movant to a hearing is a question of statutory interpretation, which we review de novo. United States v. Manning, 526 F.3d 611, 614 (10th Cir. 2008). "We begin our analysis by examining the statute's plain language and if the meaning of that language is clear, our inquiry is at an end." Woods v. Standard Ins. Co., 771 F.3d 1257, 1265 (10th Cir. 2014). Thus, we first look to the language of the 2018 FSA to determine whether it entitles a movant to a hearing.

The 2018 FSA contains three sections, and the first section defines "covered offense." § 404(a). Its second section explains who can bring a motion and the type of reduction permitted. § 404(b) (The court may reduce "as if sections 2 and 3 of the [2010 FSA] were in effect"). Its third and final section lays out the limitations on the type of 2018 FSA motions the court may entertain. § 404(c). Save for the enumerated list of who may bring a 2018 FSA motion, there is no discussion of procedural requirements in the 2018 FSA. The 2018 FSA simply does not require a hearing.

19

Because the court's jurisdiction to hear a 2018 FSA motion arises from § 3582(c)(1)(B), we look to that statute to determine whether it entitles a movant to a hearing. Section 3582(c)(1)(B) states: "[T]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Just as in the 2018 FSA, there is no discussion of procedural requirements. Thus, § 3582(c)(1)(B) does not entitle 2018 FSA movants to a hearing.

Mannie's argument that he should have had a hearing rests not on statutory interpretation, but on the importance, at sentencing, of the colloquy between the court and the defendant. Mannie cites for support our opinion in United States v. Bustamante-Conchas, 850 F.3d 1130 (10th Cir. 2017) (en banc), in which we addressed the application of plain error review to the denial of a defendant's right to allocution. In doing so, however, we confined our analysis to the "denial of allocution at a defendant's initial sentencing hearing." Id. at 1133 (emphasis added). We do not disagree with Mannie as to the importance of the defendant's right of allocution at his initial sentencing; but this is a sentence modification, not an initial sentencing.[15] There are significant differences between the two.

---

[15] Although resentencing may provide an additional right to allocution, a 2018 FSA proceeding is not a resentencing. United States v. Lucero, 713 F.3d 1024, 1028 (10th Cir. 2013) ("Sentence modification under § 3582(c) does not amount to 'resentencing' . . . ."); United States v. Torres, 99 F.3d 360, 362 (10th Cir. 1996) (explaining that resentencing does not occur when a defendant seeks a modification of their sentence as "[t]here has been no vacation of his sentence nor any order for resentencing").

First, at an initial sentencing, the Federal Rules of Criminal Procedure require not only that the defendant be present, but also that the court "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 43(a)(3), 32(i)(4)(A)(ii). At a sentence modification, on the other hand, the defendant need not even be present. Fed. R. Crim. P. 43(b)(4) (noting that the defendant's presence is not required for the "reduction of a sentence under Rule 35 or 18 U.S.C. § 3582(c)").

Second, the scope of an initial sentencing differs from that of a sentence modification. "Unlike original sentencing proceedings, in which a district court must make a host of guideline application decisions in arriving at a defendant's applicable guideline range and then ultimately impose a sentence after reviewing the [18 U.S.C.] § 3553(a) factors, proceedings to modify a term of imprisonment previously imposed are much more limited in character." United States v. Rhodes, 549 F.3d 833, 840 (10th Cir. 2008). Indeed, when modifying a sentence pursuant to § 3582(c)(1)(B), the court is limited to only those modifications "expressly permitted by statute." Here, that means that the court can only modify a sentence "as if sections 2 and 3 of the [2010 FSA] were in effect at the time the covered offense was committed." § 404(b). And, of course, a court may only reduce, not increase, the previously imposed sentence. § 404(b). These differences between an initial sentencing and a sentence modification support our conclusion that a 2018 FSA movant is not entitled to a hearing.

21

Although nothing in the 2018 FSA gives a movant a right to a hearing, how the district court chooses to proceed on a 2018 FSA motion will ordinarily fall within the inherent authority of the district court to administer its own docket. Thus, predicated on that authority and not on the 2018 FSA, the district court may, depending on the particular circumstances before it, decide to hold a hearing rather than relying on the legal briefs provided to the court. As the district court has broad discretion when exercising its inherent authority, we review any such exercise for an abuse of that discretion.

3.    Mannie's 2018 FSA Proceeding Below

Mannie asserts that he should have been provided a hearing. As just explained, because Mannie does not have a right to a hearing under the 2018 FSA, we review the court's decision to proceed without a hearing only for an abuse of discretion. We have reviewed the record before us and, on that record, find no abuse of discretion in the district court's decision to proceed on the legal briefings provided to the court.

Mannie also argues, separate from his request for a hearing, that the district court erred in not reducing his sentence. Mannie's primary contention is that the district court placed too much focus on the static, historical facts from his initial sentencing, and not enough weight on post-sentencing conduct.[16] We disagree.

---

[16] Mannie also contends that the court failed specifically to address his request for a 188-month sentence. During the proceedings below, Mannie filed a pro se brief requesting a 188-month sentence (the bottom of the guideline range), and his

22

The district court provided a thorough and reasoned explanation as to why it declined to reduce Mannie's sentence. Even when explaining the imposition of an initial sentence, the sentencing court need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356 (2007). The court acknowledged the facts before it that Mannie argued would support a sentence reduction. It recognized Mannie's rehabilitative efforts, including earning his GED and completing additional educational courses. It also noted that Mannie was sixty-three years old and had a relatively clean record while incarcerated, both of which lean towards granting relief.

The court also discussed the facts that weighed against granting a sentence reduction. Although Mannie asserts that his career offender status sufficiently accounts for his criminal history and recidivism, the district court may still properly consider "the nature and circumstances of the offense and the history and characteristics of the defendant," which are not fully considered in his career offender status. 18 U.S.C. § 3553(a)(1). Mannie's criminal career spanned almost thirty years—from his mid-20s to his mid-50s—ending only upon his incarceration, and it "has included notable brutality, in addition to dope dealing," against "virtually

appointed counsel filed a brief requesting a 120-month sentence (the new statutory minimum), both of which the court considered. By determining that no sentencing relief was warranted at all, however, the district court properly rejected both sentencing requests.

23

defenseless victims."[17]  (Mannie ROA 163.)  The court additionally pointed out that while Mannie's initial sentence was at the bottom of the guideline range, the choice to do so "was intentional and was not merely the result of reflexively defaulting to a guideline sentence."  (Id. 162.)

In light of all considerations, the court concluded that sentencing relief was not warranted.[18]  The court presented a thorough and reasonably articulated basis for its conclusion, and we cannot say that it abused its discretion in reaching that conclusion.[19]  Thus, we AFFIRM the district court's denial of Mannie's 2018 FSA motion for sentence reduction.

---

[17] Mannie's prior convictions include second degree murder, aggravated battery, battery, carrying a concealed weapon, possession of an unregistered sawed-off shotgun, and attempted possession of cocaine with intent to sell.  (Mannie ROA 160.)

[18] Notwithstanding the fact that neither the 2018 FSA nor § 3582(c)(1)(B) reference the 18 U.S.C. § 3553(a) factors, they are permissible, although not required, considerations when ruling on a 2018 FSA motion.  As the district court explained in its review below, the § 3553(a) factors have been considered by sentencing courts long before they were codified.  "There is nothing in the 2018 [FSA] or § 3582(c)(1)(B) that precludes application of common sense, regardless of whether a common-sense consideration also happens to be codified in § 3553."  (Mannie ROA 158.)

[19] Mannie asserts for the first time in his reply brief that because his new amended guideline range is 188 months to 235 months, when the district court declined to reduce his 262-month sentence, this amounted to "a de facto deviation from the proper guideline range of punishment without adequate explanation."  (Reply B. 2.)  Notwithstanding the fact that "a party waives issues and arguments raised for the first time in a reply brief," In re FCC 11-161, 753 F.3d 1015, 1070 (10th Cir. 2014), and assuming without deciding that a "de facto deviation" requires explanation, the court's explanation below as to the propriety of Mannie's 262-month sentence is sufficient to satisfy any such requirement.

## IV.  CONCLUSION

For the foregoing reasons, we DISMISS Maytubby's appeal for lack of standing, and we AFFIRM the district court's denial of Mannie's 2018 FSA motion.