**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

THOMAS DAVID SIDES,

Defendant - Appellant.

No. 20-1296
(D.C. No. 1:17-CR-00373-PAB-1)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

Thomas David Sides is serving a 108-month sentence on drug and firearm

convictions. Mr. Sides moved for compassionate release under the First Step Act

("FSA") and 18 U.S.C. § 3582(c)(1)(A), arguing his medical conditions placed him

in a high-risk category for COVID-19 and reduced the likelihood he would reoffend.

The district court denied relief, concluding (1) Mr. Sides had not completed a

sufficient portion of his sentence to reflect the seriousness of his offenses and (2) the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

need to protect the public justified continued incarceration where Mr. Sides suffered from medical conditions when he committed his offenses and enlisted his minor son in the commission of the offenses. Mr. Sides appeals, arguing the district court abused its discretion in concluding he presented a risk of reoffending and denying relief. Because the district court did not abuse its discretion, we affirm the district court's denial of relief.

## I.     BACKGROUND

In 2018, Mr. Sides pleaded guilty to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). At the time of his offenses, Mr. Sides used a wheelchair as a result of injuries he sustained to his spine and back from a 2004 traffic accident. In perpetrating his offenses, Mr. Sides utilized the services of his minor son and instructed his son to shoot anyone, including any law enforcement officer, who came to their house.

A Presentence Investigation Report ("PSR") concluded Mr. Sides's controlled substance offense involved 251 grams of heroin, 608 grams of methamphetamine, and 4.5 grams of cocaine. Based on these drug quantities, the PSR established a total offense level of thirty-one and a Guidelines range of 108 to 135 months for Mr. Sides's drug offense, with a consecutive 60-month range for the firearm offense. Aware of Mr. Sides's medical conditions as discussed at some length in the PSR, the district court imposed a 48-month sentence on the drug offense and the mandatory

2

minimum, 60-month consecutive sentence, on the firearm offense, for a total sentence of 108 months' imprisonment. Mr. Sides has a projected release date in September 2025. Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (search "Find by Name" for "Thomas David Sides") (last visited July 1, 2021).

In May 2020, Mr. Sides filed a *pro se* motion for a sentence reduction and compassionate release. At the time, Mr. Sides had served approximately 32 months of his 108-month, combined sentence. The district court appointed counsel for Mr. Sides, who renewed Mr. Sides's motion and sought relief under the FSA and 18 U.S.C. § 3582(c)(1)(A). Counsel argued Mr. Sides's medical conditions, including a tumor in his lung, a lesion in his liver, and clinical obesity, placed him in a high-risk category should he contract COVID-19. Mr. Sides further argued the facility to which he was confined, FCI Terminal Island, had experienced an outbreak, with 692 of the 1042 inmates testing positive for COVID-19.[1] And the post-release plan proposed by Mr. Sides included placement in "an appropriate nursing home." ROA, Vol. I at 103.

The government opposed Mr. Sides's motion for compassionate release, arguing in part that Mr. Sides's release would present a danger to society and he had

---

[1] The Federal Bureau of Prisons has since transferred Mr. Sides to Springfield Medical Center for Federal Prisoners. Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (search "Find by Name" for "Thomas David Sides") (last visited July 1, 2021). Mr. Sides has not advised this court regarding the presence of COVID-19 at his present facility of confinement. However, the Federal Bureau of Prisons COVID-19 webpage, as last updated on June 30, 2021, lists zero active, positive cases of COVID-19 among staff and inmates at Springfield Medical Center for Federal Prisoners. *See COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 1, 2021).

not served adequate time to reflect the seriousness of his offense. Although Mr. Sides

conceded the government's point regarding the seriousness of his offense, he

contested the government's contention that his release would pose a danger to

society. On this latter point, Mr. Sides's reply brief stated:

> Is it possible Thomas Sides will return to a life of crime as suggested by
> the Government? Sure, it is. Anything is possible. But it seems, taking
> all facts into account, highly unlikely that this 58[-]year[-]old man who
> suffers from a significant number of serious medical conditions
> confined to a wheelchair would re-offend.
> Frankly, it seems more likely Mr. Sides will have his work cut
> out just to stay alive each day. Upon his release he will need immediate
> medical treatment which will likely include at least one major surgery
> for total hip replacement and possibl[y] more. He will need [a] long
> term nursing home with advanced medical care available to address his
> medical issues and monitor his medications . . . .
> In conclusion, the 108[-]month sentence original[ly] imposed by
> the Court was very fair given the offense conduct Mr. Sides was
> responsible for committing. But circumstances have changed since that
> sentence was imposed which justify a modified in-home detention to an
> appropriate long-term nursing home for Thomas Sides.

ROA, Vol. I at 153.

The district court employed a two-part process to evaluate Mr. Sides's motion

for compassionate relief. Initially, the district court concluded Mr. Sides's medical

conditions satisfied the standard for "extraordinary and compelling reasons,"

permitting for a sentence modification as stated in United States Sentencing

Commission, Guidelines Manual §1B1.13, cmt. n.1 (2018).[2]

---

[2] Subsequent to the district court's decision, this court held United States
Sentencing Commission, Guidelines Manual §1B1.13 (2018) is not presently an
applicable policy statement for motions for sentence modifications and
compassionate release filed by prisoners pursuant to 18 U.S.C. § 3582(c)(1)(A).
*United States v. Maumau*, 993 F.3d 821, 836–37 (10th Cir. 2021). Although the

The district court then considered the 18 U.S.C. § 3553(a) factors, finding those factors did not warrant granting Mr. Sides relief. In so concluding, the district court first observed that Mr. Sides, in his reply brief, expressed skepticism about whether he would reoffend, and then noted Mr. Sides indication that "anything is possible." *Id.* at 168 Second, the district court concluded Mr. Sides's risk of committing offenses was not decreased by his medical conditions because he committed his offenses of conviction while suffering from several of the conditions, including limited mobility necessitating use of a wheelchair. Third, the district court found Mr. Sides would present a danger to others if released because (1) he had previously enlisted his fifteen-year-old son in his offenses; and (2) placing Mr. Sides in a nursing home would result in him being around elderly and vulnerable individuals. Fourth, the district court concluded the portion of his sentence Mr. Sides had served did not adequately reflect the seriousness of his offenses. Accordingly, the district court denied Mr. Sides's motion for compassionate release.

Mr. Sides timely appeals. Mr. Sides argues (1) the district court placed too much emphasis on counsel's rhetorical question and statement about it being possible that Mr. Sides might reoffend; (2) the district court ignored that Mr. Sides was seeking placement in a nursing home and not home confinement; and (3) the district court abused its discretion by concluding Mr. Sides's medical conditions and

district court analyzed Mr. Sides's motion as if it were bound by USSG §1B1.13, Mr. Sides does not contend this error proved harmful. Nor could Mr. Sides advance such an argument where the district court concluded Mr. Sides satisfied the "extraordinary and compelling reasons" standard in USSG §1B1.13.

placement in a nursing home were not sufficient to adequately deter him from committing future offenses.[3] In response, the government does not contest the district court's conclusion that Mr. Sides satisfied the "extraordinary and compelling reasons" threshold for obtaining relief based on his medical conditions. However, the government contends the district court did not abuse its discretion in denying relief under the 18 U.S.C. § 3553(a) factors where (1) Mr. Sides committed his offenses of conviction while suffering from medical conditions; (2) Mr. Sides has served less than half of his sentence, a portion of his sentence that does not reflect the

---

[3] Mr. Sides advances two additional arguments on appeal. First, he contends the terms of his supervised release would serve as an adequate deterrent to his reoffending. But, as the government points out, Mr. Sides forfeited this argument by not raising it before the district court. *United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007) ("[A] litigant's failure to raise an argument before the district court generally results in forfeiture on appeal."). And, we see no reason in this case to depart from the general rule against consideration of an argument raised for the first time on appeal. Second, Mr. Sides contends the district court abused its discretion by not discussing each 18 U.S.C. § 3553(a) factor, especially Mr. Sides's need for medical care, including hip surgery. While it would have been beneficial for the district court to expressly discuss Mr. Sides's medical needs, 18 U.S.C. § 3553(a)(2)(D), Mr. Sides does not identify any case law establishing the proposition that the district court's failure to discuss every § 3553(a) factor amounts to an abuse of discretion. This is particularly true where the factors the district court did discuss strongly counsel against granting relief. Further, we are skeptical that Mr. Sides's release to a nursing home in summer 2020 would have enabled him to obtain hip surgery, as many hospitals' non-emergency surgeries were limited due to resource management and public health decisions related to the COVID-19 outbreak. Finally, if Mr. Sides believes he is receiving constitutionally deficient medical care at his present facility of confinement, Mr. Sides may seek relief through the prison administrative remedy process and through an action for injunctive relief or a writ of mandamus. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231–36, 1240 (10th Cir. 2005).

seriousness of his offense; and (3) placing Mr. Sides in a nursing home would expose potentially vulnerable and elderly individuals to Mr. Sides.[4]

## II.    DICSUSSION

### A.  *Standard of Review*

This court applies an abuse of discretion standard to a district court's order denying relief on an 18 U.S.C. § 3582(c)(1)(A) motion. *See United States v. Williams*, 848 F. App'x 810, 812 (10th Cir. 2021) (collecting unpublished Tenth Circuit decisions applying abuse of discretion standard to denial of relief under 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Mannie*, 971 F.3d 1145, 1154 (10th Cir. 2020) (applying abuse of discretion standard to denial of relief under 18 U.S.C. § 3582(c)(1)(B)). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable."

---

[4] The government also argues the district court's conclusion that Mr. Sides would pose a danger to society if released would require denial of Mr. Sides's motion based on USSG §1B1.13(2), permitting release only if "[t]he defendant is not a danger to the safety of any other person or to the community." This court held in *Maumau*, however, that USSG §1B1.13 is not presently an applicable policy statement. 993 F.3d at 836–37. Thus, although the district court's conclusion as to the potential of Mr. Sides reoffending and the threat he posed to society is well within the district court's discretion to consider under 18 U.S.C. § 3553(a)(2)(C), its finding on this matter does not provide a basis to deny relief based on USSG §1B1.13.

*United States v. Lewis*, 594 F.3d 1270, 1277 (10th Cir. 2010) (quotation marks omitted).

### B. Analysis

Before granting a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), a district court must (1) "find[] that extraordinary and compelling reasons warrant such a reduction"; (2) "find[] that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "consider[] the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021). Here, the district court denied relief based on its consideration of the § 3553(a) factors. Specifically, the district court concluded Mr. Sides had not served a sufficient portion of his sentence "to reflect the seriousness of [his] offense[s]" and that further incarceration of Mr. Sides was necessary "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2)(A), (C).

Both bases for denying relief are well supported by the record. According to the PSR, Mr. Sides faced a Guidelines range of 108–135 months on the drug conviction, plus a consecutive 60-month sentence on the firearm conviction. The district court, aware of Mr. Sides's medical conditions, imposed a *combined* sentence of 108 months, with 48 months to be served on the drug conviction and the consecutive mandatory of 60 months on the firearm conviction. Thus, Mr. Sides's sentence already reflects a significant reduction from the low-end of the Guidelines range in the PSR. And, at the time Mr. Sides filed his § 3582(c)(1)(A) motion, he had

served less than half his total sentence and less than the 60-month sentence for the firearm offense. Given the drug quantity involved in Mr. Sides's offense and that Mr. Sides's offense also involved a firearm, it was not an abuse of discretion for the district court to conclude time-served of 32 months' imprisonment did not reflect the seriousness of the offense. *See United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (discussing departure in initial sentence and that defendant had not yet served half of his sentence as bases for concluding district court did not abuse discretion in denying relief).

Turning to imposing a sentence adequate to protect the public and deter Mr. Sides, the district court accurately noted that while Mr. Sides currently suffers from several medical conditions significantly limiting his mobility, he suffered from some of these conditions at the time of the commission of his offenses. In fact, Mr. Sides was often wheelchair-bound prior to his offenses. But such limitation on his mobility was not sufficient to circumscribe Mr. Sides's ability to commit serious drug and firearm offenses. And the record evidence showing that Mr. Sides involved his minor son, who was presumably subject to his influence and manipulation, to facilitate the offenses supports the district court's conclusion that placing Mr. Sides in a nursing home where elderly and ill individuals live could place a vulnerable population at risk.[5] Thus, the district court did not abuse its discretion by concluding

---

[5] Where the district court discussed the risk to elderly and vulnerable populations in a nursing home to which Mr. Sides might be released, it is apparent, contrary to Mr. Sides's contention on appeal, that the district court was aware of and

the need to protect the public warranted denying Mr. Sides's motion.[6] *See Ruffin*, 978 F.3d at 1008–09 (observing that a defendant's medical conditions may not eliminate the need to protect the public where the defendant committed his offenses of conviction while suffering from the conditions).

### III.    CONCLUSION

The district court did not abuse its discretion by concluding that a 32-month sentence did not adequately reflect the seriousness of Mr. Sides's offenses of conviction and that Mr. Sides's medical conditions at the time of his motion did not alleviate the need to protect the public given the medical conditions he suffered from at the time of his offenses. Accordingly, we **AFFIRM** the district court's order.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

considered that Mr. Sides was seeking placement in a nursing home rather than release to home confinement.

[6] We agree with Mr. Sides that his counsel's reply brief comment that "[a]nything is possible" as to reoffending was a rhetorical device and not actually a concession specific to Mr. Sides's likelihood of reoffending. Thus, the district court did err in relying on this comment as part of its analysis regarding the protection of the public. However, we are convinced this error was harmless given the entirety of the district court's reasoning for denying Mr. Sides's motion. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *see also United States v. Ollson*, 413 F.3d 1119, 1120 (10th Cir. 2005) ("An error with respect to sentencing does not affect substantial rights when it did not affect the sentence imposed by the district court.").