**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILLIAM L. GLADNEY, a/k/a "L",

    Defendant - Appellant.

No. 21-1159

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:05-CR-00141-MSK-8)**
_____

David G. Maxted, Maxted Law LLC, Denver, Colorado, appearing for the Appellant.

Marissa R. Miller, Assistant United States Attorney (Cole Finegan, United States Attorney, with her on the brief), Office of the United States Attorney for the District of Colorado, Denver, Colorado, appearing for the Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **MATHESON**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

Defendant William Gladney was convicted in 2007 of three criminal counts:

violating the Racketeer Influenced and Corrupt Organizations (RICO) Act, in

violation of 18 U.S.C. §§ 1962(c) and 1963(a); conspiracy to distribute more than 50

grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); and

using, carrying, or possessing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1) and (2).  Gladney was sentenced to concurrent life sentences on the RICO and drug conspiracy convictions, followed by a ten-year consecutive sentence on the firearms conviction.

In 2020, Gladney filed a motion to reduce his sentence in light of changes that Congress implemented to the sentencing scheme for offenses involving cocaine base. Gladney also sought funds to hire an investigator to gather evidence to support his motion for reduction of sentence.  The district court denied without prejudice Gladney's request for funds.  It then denied Gladney's motion for reduction of sentence.

Gladney now appeals from these two rulings.  For the reasons that follow, we dismiss Gladney's appeal for lack of standing.

I

A

This court previously described Gladney's crimes in detail in its decision affirming Gladney's convictions and sentences.  *See United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009).  Gladney's crimes all occurred at the Alpine Rose Motel in Denver.  The motel "was a hub of drug activity for years," but "the business really ratcheted up in 2004 when Lee Arthur Thompson and Alvin Hutchinson moved in." *Id*. at 1016.  Thompson was a crack supplier and Hutchinson was  "a prolific dealer" at the motel.  *Id*.  "Together" the two men "acted as authority figures, directing the drug trade at the Alpine Rose."  *Id*.

The residents of the Alpine Rose, all of whom were selected by Thompson and Hutchinson, "performed a variety of roles" in the drug trade. *Id*. Some of the residents were dealers "who received drugs from . . . Thompson and . . . Hutchinson and resold them to street-level customers." *Id*. Other residents served as "enforcers" who "ensured that motel residents abided . . . Thompson's and . . . Hutchinson's directions." *Id*. at 1017.

Gladney was one of the dealers who lived at the Alpine Rose. "On October 23, 2004," an individual named "Marlo Johnson sought to purchase drugs from . . . Gladney." *Id*. at 1018. Although "Gladney was not in his room," one of Gladney's lookouts "gave . . . Johnson drugs." *Id*. "Johnson later returned to the room, complaining that he had been shorted." *Id*. "Apparently upset by the challenge to his (and his lookout's) honor, . . . Gladney responded by shooting and killing . . . Johnson." *Id*. "Gladney later told" his lookout "that he did so to set an example for other 'punks.'" *Id*.

"[A]t the height of the motel's crack dealing operation in . . . 2004," approximately "100 customers visited each day" to purchase crack. *Id*. at 1016. The district court in this case conservatively estimated that the operation distributed between 8.4 and 25.2 kilograms of crack.

B

Gladney, Thompson, and Hutchinson, as well as five other individuals involved in the drug trafficking operation, were eventually arrested and charged in federal court in connection with their activities at the Alpine Rose. Gladney,

3

Thompson and another individual were tried together. At the conclusion of the trial, the jury convicted Gladney of three counts: violating the Racketeer Influenced and Corrupt Organizations (RICO) Act, in violation of 18 U.S.C. §§ 1962(c) and 1963(a) (Count 1 of the second superseding indictment); conspiracy to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count 3 of the second superseding indictment); and using, carrying, or possessing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1) and (2) (Count 21 of the second superseding indictment).

Gladney was sentenced on June 7, 2007. During the sentencing hearing, the district court detailed its Guidelines calculations. The district court began by noting that "[t]he guidelines calculations for Count 1 [(the RICO conviction)] encompass[ed] the drug amounts attributed to Count 3 [(the conspiracy to distribute and possess with intent to distribute cocaine base conviction)]," and that, consequently, "pursuant to Section 3D1.2 of the guidelines, Count 1 and Count 3 [we]re grouped for guideline calculations." ROA at 64. The district court in turn noted that Gladney "was found guilty of seven separate racketeering acts" in connection with Count 1. *Id.* One of those acts "was the murder of . . . Johnson"; the remaining six acts all related to Gladney's involvement in distributing crack cocaine. *Id.* at 64–65. The district court stated that the six drug-related racketeering acts "[we]re grouped for calculations pursuant to [U.S.S.G. §] 3D1.2(d), and [that] the appropriate guideline [wa]s Section 2D1.1." *Id.* at 65. Section 2D1.1, the district court noted, "states that if a victim was killed under circumstances that would

4

constitute murder under 18 U.S.C. Section 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States[,] that Section 2A1.1 or Section 2A1.2 would be applied as appropriate." *Id.* "Accordingly," the district court noted, "all racketeering acts [we]re grouped for guideline calculations as to Count 1." *Id.* The district court then noted that "Count 3 [wa]s grouped with Count 1, and the guideline used for Count 1 [wa]s Section 2A1.1, first degree murder." *Id.* "The base offense level . . . for this [Count 1] and Count 3," the district court noted, was "43." *Id.*

The district court applied three enhancements to the base offense level: (1) a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) because "there were more than five participants involved in such conspiracy"; (2) a two-level enhancement pursuant to U.S.S.G. § 3B1.4 because Gladney "utilized a 17-year-old minor to sell cocaine base"; and (3) a two-level enhancement "for obstruction of justice" due to Gladney "concealing his identity while at the Alpine Rose Motel" and "directing [another individual] to dispose of . . . the revolver used in the murder of . . . Johnson." *Id.* at 66. Although "these adjustments" raised the total offense level to 51, the district court noted that "Application Note 2 to Sentencing Guideline Chapter 5, Part A, states in rare cases a total offense level may exceed 43 and if it does so the offense level is to be treated as an offense level of 43." *Id.* at 66–67.

The district court then noted that Gladney had "no prior felony conviction[s]" and thus his "criminal history category [wa]s I." *Id.* at 67. "With a total offense level of 43 and a criminal history category of I," the district court noted, "the

guidelines provide[d] for life imprisonment on Count 1 and Count 3 concurrently."
*Id*. at 67. The district court also noted that a statutory mandatory minimum sentence of ten years applied to the firearms conviction and was "to be served consecutively to the sentence[s] on Counts 1 and 3." *Id*. at 67–68. Ultimately, the district court sentenced Gladney to concurrent life sentences on the RICO and conspiracy convictions,[1] and a consecutive ten-year sentence on the firearms conviction.[2]

C

In 2010, approximately three years after Gladney was sentenced, Congress enacted the Fair Sentencing Act of 2010 (Fair Sentencing Act), 124 Stat. 2372. The Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum [statutory sentence under § 841(b)(1)(B)] and from 50 grams to 280 grams in respect to the 10-year minimum [statutory sentence under § 841(b)(1)(A)] (while leaving powder at 500 grams and 5,000 grams respectively)." *Dorsey v. United States*, 567

---

[1] The statutory maximum sentence for both of these convictions was life imprisonment. *See* 18 U.S.C. § 1963(a) (criminal penalties for RICO conviction); 21 U.S.C. § 841(b)(1)(A) (criminal penalties for drug conspiracies involving certain quantities of drugs).

[2] After the completion of his federal trial, Gladney was convicted in Colorado state district court of first-degree murder and sentenced to a term of life imprisonment without the possibility of parole. *People v. Gladney*, 250 P.3d 762, 765 (Colo. Ct. App. 2010). The Colorado Court of Appeals affirmed Gladney's conviction in May 2010, and the Colorado Supreme Court denied his petition for certiorari in October 2010.

U.S. 260, 269 (2012). These statutory changes, however, were not made retroactive by Congress.

"The Sentencing Commission then altered the drug quantity table used to calculate Guidelines ranges." *Terry v. United States*, 141 S. Ct. 1858, 1861 (2021) (citing U.S.S.G. § 2D1.1(c)). "The Commission decreased the recommended sentence for crack offenders to track the statutory change Congress made." *Id*. "It then made the change retroactive, giving previous offenders an opportunity for resentencing." *Id*. "Courts were still constrained, however, by the statutory minimums in place before 2010." *Id*. "Many offenders thus remained sentenced to terms above what the Guidelines recommended." *Id*.

"Congress addressed this issue in 2018 by enacting the First Step Act" of 2018 (First Step Act), 132 Stat. 5222. *Id*. at 1861–62. Section 404 of the First Step Act authorized district courts to impose reduced sentences for defendants convicted of a "covered offense," which the Act defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." First Step Act of 2018, Publ. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). "An offender is eligible for a sentence reduction under the First Step Act only if he previously received 'a sentence for a covered offense.'" *Terry*, 141 S. Ct. at 1862 (citing § 404(b) of First Step Act, 132 Stat. 5222).

D

On January 3, 2020, Gladney filed a pro se motion to reduce his sentence pursuant to § 404 of the First Step Act. ROA at 76. Gladney asserted that if he had been sentenced under the Fair Sentencing Act, he "would face a maximum sentence of 40 years under [§] 841(b)(1)(A), and a minimum of 20 years under 18 U.S.C. § 1962(c), and 1963(a), and not a life sentence under either, because even though the First Step Act did not modify the Rico [sic] conspiracy charged under § 1962, or 1963, it did modify [his] count three [i.e., his drug conspiracy conviction] by effecting the statutory minimum and maximum penalties for 10 to life, to 5 to 40 years." *Id*. at 77. Gladney argued that his RICO conviction was "related to the underlying drug conspiracy," and that the drug conspiracy conviction "now provide[d] [a] basis for a reduction . . . because [he] was charged for a 50 grams or more cocaine base conspiracy, and [that] [wa]s the underlying predicated [sic] offense for the Rico [sic] conspiracy." *Id*.

Counsel was appointed to represent Gladney. Gladney's appointed counsel requested $1,700 in funding to pay for an investigator to gather records and interview witnesses in support of his motion for reduction of sentence. The district court "denie[d] the request . . . without prejudice," noting that "the question of whether . . . Gladney [wa]s entitled to a resentencing under the First Step Act" was "a purely legal issue for which no additional investigation [wa]s necessary." Aplt. Mot. to Supplement Record at 11. The district court further noted that if it determined that Gladney was "entitled to resentencing," it "w[ould] then entertain a request for

8

investigative services to address the 18 [U.S.C. §] 3553 factors that b[ore] on the new sentence to be imposed." *Id*.

On April 15, 2021, the district court issued an opinion and order denying Gladney's motion to reduce sentence.[3]  ROA at 160.  As an initial matter, the district court concluded that Gladney was "eligible for consideration under the [First Step] Act" because he "was convicted of violating 21 U.S.C. § 841(b)(1)(A), a statute that constitutes a 'covered offense' under the First Step Act." *Id*. at 167.  The district court in turn concluded, however, that Gladney "face[d] an obstacle in resentencing on" that drug conspiracy conviction. *Id*. at 168.  The district court explained:

> For practical purposes, Count Three is the only count of conviction that is a "covered offense" under the First Step Act's language, and thus, the only Count upon which the Court can modify their sentences.  But [Gladney] w[as] also convicted and sentenced to life imprisonment on Count One, RICO conspiracy.  Even if the sentence on Count Three was reduced in accordance with the First Step Act, such reduction would be only of a technical or symbolic nature because the life sentence[] would continue to control the length of [his] incarceration.  Recognition of this reality suggests that the Court should decline to resentence on [the] Count Three conviction[] unless or until a collateral attack on [his] conviction[] or sentence[] on Count One is successful, or perhaps conclude that it lacks jurisdiction to consider [Gladney's] motion[] entirely.

*Id*. at 168–69.  The district court therefore "exercise[d] its discretion to decline to consider the application of the First Step Act to" Gladney's conviction because his RICO conspiracy sentence "w[ould] continue to control the length of [his] continued

---

[3] The district court's opinion and order also addressed similar motions filed by three of Gladney's codefendants.

incarceration," and thus "consideration of the merits of [his] First Step Act motion[] would serve only a technical, not practical, purpose." *Id*. at 172.

The district court also noted that "[e]ven if [it] were to reach the merits of . . . Gladney's motion[], it would nevertheless deny [his] request for First Step Act relief." *Id*. at 173. The district court noted in support that, in contrast to his codefendants, Gladney "was accused and convicted of Racketeering Act One, namely the murder of Marlo Johnson, and Racketeering Act Two, participating in the drug conspiracy." *Id*. at 180. The district court in turn noted that, in accordance with U.S.S.G. § 3D1.2(d), it grouped all of Gladney's racketeering acts together for purposes of its Guideline calculations. As a result of this grouping, the district court noted, "the Guideline that controlled . . . Gladney's sentencing for purposes of Count Three was the appropriate Guideline applicable to Count One, which the Court determined to be that applicable to First Degree Murder, [U.S.S.G.] § 2A1.1." *Id*. "Because . . . Gladney's Guideline calculation was not driven by the Drug Quantity Table in § 2D1.1(c)," the district court noted, "changes in that table as a result of the First Step Act d[id] not alter the calculus for . . . Gladney." *Id*. at 181. "Gladney's Guideline calculation," the district court explained, "would be exactly the same today as it was in 2007, and thus, the First Step Act offers [him] no actual relief." *Id*. And, the district court noted, "even if [it] were to de-couple Count Three from Count One and calculate . . . Gladney's sentence on Count Three independently, the result would be the same." *Id*. The district court explained that if it "were to find the drug quantity attributable to Count Three [wa]s between 8.4 and 25.2 kilograms of crack—

a finding that would tend to <u>understate</u> the quantities supported in the record—that finding would yield a base Offense Level of 36 under § 2D1.1(c)(2)." *Id*. (emphasis in original). Further, "Gladney [wa]s subject to 8 levels of enhancement . . . , yielding an adjusted Offense Level of 42." *Id*. "At Offense Level 42 with a Criminal History category of I, . . . Gladney would be subject to a Guideline range of 360 months to life." *Id*. at 181–82. The district court stated that, in light of "the scale and brazenness of the operation, as well as . . . Gladney's culpability for the murder of . . . Johnson," it "would sentence . . . Gladney at the high end of that range and impose a life sentence in any event." *Id*. at 182. Thus, the district court concluded that "although . . . Gladney [wa]s eligible for First Step Act relief," it "exercise[d] its discretion to deny that relief." *Id*. at 185.

Gladney filed a timely notice of appeal. He has since filed a motion to supplement the record on appeal to include the records pertaining to his request for funding for an investigator.

## II

### A

Gladney argues on appeal that the district court erred in finding him ineligible for a reduction of sentence under the First Step Act. According to Gladney, "[a] plain reading of the [First Step Act] shows Section 404 does not limit eligibility to defendants who were only convicted and sentenced on covered offenses alone." Aplt. Br. at 10. In other words, he argues the plain text of Section 404 of the First Step Act compels the conclusion that a defendant is eligible for a reduction if

convicted of a covered offense, even if also convicted of non-covered offenses. *Id*. at 12. Gladney in turn argues that "the plain language" of the First Step Act "authorizes a reduction for covered as well as non-covered offenses." *Id*. at 10. And in his case, Gladney argues, "[r]educing the sentence on one count unbundles the sentencing package, allowing the court to reduce [his] sentence as to both Counts 1 and 3." *Id*.

As we shall proceed to explain, Gladney's arguments are largely foreclosed by this court's decision in *United States v. Mannie*, 971 F.3d 1145 (10th Cir. 2020). Moreover, as we shall also explain, the decision in *Mannie* requires us to conclude that Gladney lacks standing and that, in turn, the district court lacked constitutional jurisdiction over Gladney's motion to reduce his sentence.

*Sentence modification and the First Step Act*

Although a district court generally "has no authority to modify [a] sentence" once it is imposed, "Congress has provided the court with the authority to modify previously imposed sentences in three, very limited circumstances." *Mannie*, 971 F.3d at 1148. "One such exception permits a court to modify a previously imposed sentence when a modification is 'expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.'" *Id*. (quoting 18 U.S.C. § 3582(c)(1)(B)). "While this exception authorizes [a] court to implement modifications, it does not itself provide standards for those modification[s]." *Id*. "Thus," a "court must look elsewhere to find another statute containing said standards." *Id*.

"In this case, those statutes are the Fair Sentencing Act . . . and the First Step Act." *Id*. As previously noted, "the Fair Sentencing Act was passed to remedy the

100:1 crack-to-powder cocaine sentencing disparity." *United States v. Brown*, 974

F.3d 1137, 1142 (10th Cir. 2020). And "[t]he First Step Act made the Fair

Sentencing Act's changes to crack cocaine penalties retroactive." *United States v.*

*Broadway*, 1 F.4th 1206, 1209 (10th Cir. 2021).

Section 404 of the First Step Act provides as follows:

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018).

When a defendant moves to modify his or her sentence under § 3582(c) in

accordance with the First Step Act, the district court must first determine if the defendant

is eligible for relief under the First Step Act. *See United States v. Crooks,* 997 F.3d 1273,

1278 (10th Cir. 2021) (holding that eligibility for relief under the First Step Act turns on

"defendant's federal offense of conviction, not his [or her] underlying conduct")*; United States v. Holloway*, 956 F.3d 660, 666 (2d Cir. 2020). Eligibility for relief hinges, in pertinent part, on whether the defendant was convicted of a "covered offense," as that phrase is defined in the First Step Act. *Crooks*, 997 F.3d at 1278. If the district court determines that the defendant is eligible for relief under the First Step Act, it must in turn evaluate whether the defendant is entitled to relief. Generally speaking, that requires the district court to "correctly calculate the defendant's revised Guidelines range prior to exercising its discretion to grant or deny relief." *United States v. Burris*, 29 F.4th 1232, 1235 (10th Cir. 2022).

"We review a district court's disposition of a First Step Act motion for abuse of discretion." *Id.* at 1234. "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *Id.* (quotation marks omitted). "We review matters of statutory interpretation, as well as the scope of a district court's authority to reduce a sentence, de novo." *Id.* (quotation marks omitted).

*The district court correctly concluded that Gladney was eligible for relief under the First Step Act*

It is undisputed that Gladney's conviction of Count 3, for conspiracy to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), constitutes a "covered offense" under the First Step Act. That is because the acts that gave rise to the conviction occurred prior to August 3, 2010 (the effective date of the Fair Sentencing Act), and Congress lowered the

14

statutory penalties for that offense in the Fair Sentencing Act. *See Mannie*, 971 F.3d at 1152 ("to be initially eligible for relief" under the First Step Act, "an offender must have been convicted of and sentenced for (1) a violation of a federal criminal statute, (2) the penalties for which were modified by section 2 or 3 of the 2010 [Fair Sentencing Act], and (3) that was committed prior to August 3, 2010").[4]

Gladney argues in his appeal that the district court erroneously concluded that the First Step Act affords relief only to defendants who were convicted of one or more "covered offenses," and not to a defendant, like Gladney, who was convicted of both a "covered offense" and one or more non-covered offenses. But that is a mischaracterization of the district court's holding. The district court plainly did not hold that Gladney's conviction of a non-covered offense precluded him, as a matter of law, from obtaining relief under the First Step Act. Indeed, the district court expressly concluded that Gladney "was convicted of violating 21 U.S.C. § 841(b)(1)(A), a statute that constitutes a 'covered offense' under the First Step Act, and thus . . . [wa]s eligible for consideration under the Act." ROA at 167. Thus, the district court did not abuse its discretion in considering Gladney's general eligibility for relief under the First Step Act.

---

[4] Gladney argued in the district court that his RICO conviction also qualified as a "covered offense" under the First Step Act, but the district court rejected that argument and Gladney has abandoned it on appeal. Consequently, for purposes of this appeal, we shall assume, without deciding, that Gladney's RICO offense is not a "covered" offense under the First Step Act.

15

*The district court correctly concluded that Gladney was not entitled to
relief under the First Step Act*

In determining whether Gladney was entitled to relief under the First Step Act,

the district court concluded that even if it reduced Gladney's sentence for the

"covered" drug conspiracy conviction, "such reduction would be only of a technical

or symbolic nature because the life sentence[]" for the RICO conviction "would

continue to control the length of [Gladney's] incarceration." *Id*. at 169.  For that

reason, the district court stated that it would "exercise its discretion to decline to

consider the application of the First Step Act to" Gladney's conviction because

"consideration of the merits of [his] First Step Act motion[] would serve only a

technical, not practical, purpose." *Id*. at 172.

In his appeal, Gladney takes issue with the district court's conclusions, arguing

that "[n]othing in" the First Step Act "restricts or excludes from th[e] [sentence]

reduction" authorized by the Act "other offenses of conviction," including his RICO

conviction.  Aplt. Br. at 16.  In other words, Gladney argues, "Congress did not

exclude from a reduction those convicted of RICO conspiracy or other non-covered

offenses, so long as the individual was convicted of a 'covered offense' and is

otherwise eligible." *Id*. at 20.  Gladney further argues that "[t]he United States has

also conceded in multiple cases that district courts may grant reductions impacting

the entire sentencing package, and should be held to that position here." *Id*. at 16.

Lastly, Gladney argues that the "sentencing package doctrine" supports the

conclusion that the sentences for all of his offenses of conviction may be reduced.  In

sum, Gladney argues, "[t]his Court should conclude that the plain text of Section 404 [of the First Step Act] makes [him] eligible for a reduction in his sentencing package." *Id*. at 22.

In *Mannie*, this court effectively rejected these same arguments. One of the two defendants in *Mannie*, Michael Maytubby, was convicted in 2006 of eight criminal counts, including one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846. He was originally sentenced to 235 months on the conspiracy count, as well as 235-month sentences on two other counts. In total, Maytubby was sentenced to a total term of imprisonment of 295 months. In 2007, Maytubby's three original 235-month sentences were reduced to 188 months due to an amendment to the Sentencing Guidelines. In 2014, those same three sentences were further reduced to 151 months due to another amendment to the Sentencing Guidelines.

In 2019, Maytubby moved for a further reduction pursuant to the First Step Act. Although the district court concluded that Maytubby was eligible to seek relief under the First Step Act due to his conviction of a covered offense, the district court determined that the First Step Act did not change Maytubby's advisory guideline range of 151 months to 188 months, and that the First Step Act's only impact was a reduction in the statutory minimum sentence for the conspiracy conviction (from ten years to five years). The district court determined that Maytubby's sentence remained appropriate and declined to reduce the sentence further.

17

Maytubby appealed and argued "that the district court erred by (1) treating the lack of change in his advisory guideline range as dispositive, (2) failing to provide Maytubby a hearing, and (3) declining to further reduce his sentence." 971 F.3d at 1151. Maytubby also, after oral argument and in response to an order issued by the panel, filed a supplemental brief arguing that Congress, in the First Step Act, vested district courts with jurisdiction to impose a reduced sentence for a covered offense and counts over which the covered offense, through the guidelines computation and application, determined the sentence. In other words, as Gladney does here, Maytubby essentially argued that the First Step Act effectively authorized, and the sentencing package doctrine all but required, a district court to reduce the sentence for a non-covered offense if that sentence was the result of the district court originally grouping covered and non-covered offenses for purposes of Guidelines calculations.

Although the court in *Mannie* did not directly address these arguments, it effectively rejected them. Specifically, the court began by noting that Mannie's "sentence for his 2018 FSA [First Step Act] covered offense [wa]s 151 months," and "r[an] concurrently with two of [his] other convictions for offenses *not covered by the 2018 FSA*." 971 F.3d at 1153 (emphasis added). The court later made a similar statement: "Maytubby's sentence for his 2018 FSA 'covered' crack cocaine offense runs concurrently with his *two sentences for drug offenses not covered by the 2018 FSA*." *Id.* (emphasis added). Lastly, the court stated:

18

> Where, as here, an offender has been sentenced concurrently, the court can only redress the ongoing incarceration to the extent that some portion of the incarceration is *solely dependent* on the sentence of the crack cocaine offense that might be reduced under the 2018 FSA.

*Id*. (emphasis added).

In light of the arguments that Maytubby made in his supplemental appellate brief, we conclude that these statements by the court must be read as holding that the First Step Act prohibits a district court from reducing the sentence on a non-covered offense, even if, as was true in Maytubby's case, the covered and non-covered offenses were grouped together under the Sentencing Guidelines and the covered offense effectively controlled the sentence for the non-covered offense.[5]

Guided by this court's precedent, we therefore conclude that Gladney's arguments regarding the ability of a district court to reduce the sentence on a non-covered offense are foreclosed by *Mannie*.[6]

---

[5] We note that this holding in *Mannie* created a circuit split because, approximately a month before *Mannie* was issued, the Seventh Circuit held that Section 404(b) of the First Step Act "does not bar a court from reducing [the sentence for] a non-covered offense" in cases where the non-covered offense "was grouped with [the] covered offenses for sentencing, and the resulting aggregate sentence included . . . sentences for both the [non-covered] and covered offenses." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020).

[6] In *Mannie*, this court emphasized that a concurrent sentence on a non-covered offense does not always mean a defendant lacks constitutional standing under the First Step Act. *See* 971 F.3d at 1153 n.9. For example, "a sentencing court may have jurisdiction to reduce an offender's sentence for [non-covered] offenses under [18 U.S.C.] § 3582(c)(2)," a sentence modification statute that is separate from the First Step Act. *Id*. In that instance, a court would have separate statutory bases to reduce each sentence—(1) the First Step Act to reduce the covered offense

(Cont'd)

*Gladney lacks constitutional standing*

We in turn conclude that Gladney lacks constitutional standing.  Federal courts, being courts of limited jurisdiction, must always be sure of their own subject matter jurisdiction, including that the party seeking relief has standing.  *Navajo Nation v. Dalley*, 896 F.3d 1196, 1203 (10th Cir. 2018).  Standing, as an essential part of Article III's "case and controversy" requirement, is a fundamental limitation on the federal courts' constitutionally granted jurisdiction.  *See Mannie*, 971 F.3d at 1152.  A district court may "modify a defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."  *Id*. at 1151 (quotation marks and emphasis omitted).  Therefore, a defendant who moves a federal district court to modify his sentence must demonstrate that the district court possesses both statutory and constitutional jurisdiction over his motion.

Here, Gladney's eligibility for relief under the First Step Act, due to his conviction of a covered offense, provided the district court with statutory jurisdiction over his motion.  *See Mannie*, 971 F.3d at 1152.  But, as we have explained, this court's decision in *Mannie* precluded the district court from reducing the sentences on Gladney's non-covered offenses.  As a result, any reduction the district court could have made to the sentence on Gladney's covered offense "would not actually

sentence, and (2) § 3582(c)(2) to reduce a non-covered offense sentence, and the defendant would thus have standing.  *See id.*

But in *Mannie*, we concluded that § 3582(c)(2) did not authorize any further reduction of Maytubby's sentences for the non-covered offenses.  *See id*. at 1153–54.  And here, Gladney does not rely on § 3582(c)(2) as a basis to reduce his sentence on the RICO conviction.  *See* Oral Arg. at 12:15–13:35.

reduce the length of [Gladney's] incarceration." *Id.* at 1154. Again, guided by this court's precedent, we conclude the district court therefore "cannot redress [Gladney's] injury" and, in turn, Gladney's motion for reduction of sentence under the First Step Act "does not present a live controversy."[7,8] *Id.*

### III

We DENY Gladney's motion to supplement the record on appeal and DISMISS Gladney's appeal for lack of standing.

---

[7] We note that there is some tension between *Mannie*'s standing and constitutional jurisdiction analysis and this court's prior decisions on those issues. In particular, *Mannie* concluded that Maytubby lacked standing, and that the district court in turn lacked constitutional jurisdiction over his motion, only after considering and rejecting on the merits Maytubby's arguments that the First Step Act authorized the district court to reduce the sentences on his non-covered offenses. In pre-*Mannie* cases, however, we have held that a court must assume for standing purposes that the plaintiff's claims are correct on the merits. *E.g.*, *WildEarth Guardians v. EPA*, 759 F.3d 1196, 1207 (10th Cir. 2014).

[8] For this reason, we deny as moot Gladney's argument that "the district court abused its discretion" by denying Criminal Justice Act (CJA) "funds for an investigator to obtain mitigation and other evidence." Aplt. Br. at 26.